IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Wally Boone, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14cv1619 (AJT/TCB) |
| | ) | |
| C.D. Everett, <u>et al.</u>, | ) | |
|     Defendants. | ) | |

<u>MEMORANDUM OPINON & ORDER</u>

Wally Boone, a Virginia inmate proceeding <u>pro se</u>, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that jail officials used excessive force against him and showed deliberate indifference to his serious medical needs at Sussex I State Prison ("SISP"). Defendant Nurse Sidi has filed a Motion to Dismiss in this case, and plaintiff has filed a response. Accordingly, the matter is now ripe for disposition. Upon review of the filings, plaintiff's claim against Nurse Sidi must be dismissed due to plaintiff's failure to exhaust his administrative remedies.

**I. Background**

a. <u>Plaintiff's Factual Allegations</u>

Plaintiff alleges that defendants Everett and Rodriguez, correctional officers at SISP, used excessive force against him on June 3, 2014. Dkt. No. 9 at 2-3. Plaintiff states that he was taken to the medical unit on June 3, 2014 after the alleged use of excessive force. <u>Id.</u> at 4. At that time, his "eyes were blackened and swollen[,] [he] had scraps [sic] and abrasions to [his] leg from being dragged, and [his] head and throat was in great pain." <u>Id.</u> Defendant Nurse Sidi examined plaintiff after the incident. <u>Id.</u> When plaintiff informed her of the severe pain in his head and throat, she "stated that 'it was normal after being choked – and all that [he] needed was something cold to drink.' And then she left." <u>Id.</u>

Plaintiff states that, later that same night, he experienced a severe headache, dizziness, and severe pain in his throat that rendered him unable to eat. He submitted an emergency grievance, as well as two sick call requests, regarding this pain. Id. Several hours later, the officer on duty told plaintiff that defendant Nurse Sidi had directed him to put in another sick call request, and that she would not treat him that night because she had already seen him earlier that day. Id. at 5. Plaintiff states that his emergency grievance "went unanswered" for several days until he was seen in the medical unit on June 7, 2014. Id. However, plaintiff alleges that he suffered another medical emergency on June 9, 2014, allegedly related to the same injuries. Id. He states that he would not have suffered this medical emergency had medical staff, in particular Nurse Sidi, properly responded to his emergency grievance on June 3, 2014. Id.

Following his June 9, 2014 medical emergency, plaintiff allegedly submitted four sick call requests before he met with a nurse that administered CTMs and Motrin. Id. Plaintiff claims that Nurse Sidi was deliberately indifferent by denying him medical attention on June 3, 2014. Id. at 7. He requests declaratory, injunctive, and monetary relief. Id. at 8-9.

b. Plaintiff's Grievance History

Plaintiff contends that he fully complied with the grievance procedure and that he exhausted all levels of SISP's grievance process as of July 23, 2014. Id. at 6. He attached his grievances and the related responses to his Amended Complaint. See Dkt. No. 9.

Regarding defendant Nurse Sidi, plaintiff attached two Informal Complaints that were submitted on June 25, 2014 (although they are both dated June 7, 2014 by plaintiff), in which he indicated that he had throat and head pain and that he did not receive responses to his emergency grievances. Id. at Att. 3. On July 7, 2014, within fifteen (15) days of receiving the Informal Complaints, Nurse Woodruff responded that plaintiff was seen by Nurse Butts on June 7, 2014 and by Nurse Thigpen on June 9, 2014, and that Dr. Ulep had reviewed plaintiff's medical records.

2

Id.

Plaintiff did not file Level I Grievances until July 9, 2014, over thirty (30) days after June 3, 2014, in which he complained that he had not received responses to emergency grievances on June 3, 2014 for throat and head pains and stated that he did not know what action he wanted taken. Id. These grievances were rejected because plaintiff had not specified what he was requesting and because they were untimely. Id. Plaintiff then sent a letter to Regional Ombudsman on July 9, 2014, which was received on July 11, 2014, in which plaintiff claimed that he waited to write and file his grievance until July 8, 2014 because he was waiting for a response to his Informal Complaints. Id. Plaintiff stated that he believed that his appeal would have been returned "for not following the informal process" if he filed his appeal within the time limit to do so. Id.

The Virginia Department of Corrections, Operating Procedure 866.1 (OP) provides at Section V(B): "If 15 calendar days have expired from the date the Informal Complaint was logged without the offender receiving a response, the offender may submit a Grievance on the issue and attach the Informal Complaint receipt as documentation of the attempt to resolve the issue informally." See Dkt. No. 23, Ex. A at 5. With respect to such Level I Grievances, OP provides that "Grievances are to be submitted within 30 calendar days from the date of the occurrence/incident or discovery of the occurrence/incident." Id. at 7.

## II. Standard of Review

Rule 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court may dismiss claims based upon dispositive issues of law. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v.

3

King & Spalding, 467 U.S. 69, 73 (1984).

### III. Analysis

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). The PLRA requires "proper" exhaustion, which demands "compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90-91, 93. In the context of prisoner suits, proper exhaustion provides prisons the opportunity to correct their errors before being hauled into federal court, reduces the quantity of prisoner suits by either granting relief at the administrative level or persuading prisoners not to further pursue their claim in a federal court, and improves the quality of the prisoner suits that are filed in federal court by creating an administrative record for the court to reference. Id. The benefits of proper exhaustion are only realized if the prison grievance system is given a "fair opportunity to consider the grievance" which will not occur "unless the grievant complies with the system's critical procedural rules." Id. at 95; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

As an inmate in a local jail, plaintiff is required to exhaust the claims raised in his complaint in accordance with his institution's grievance process. Before bringing his claims in a federal lawsuit, plaintiff must file a grievance as to each claim and must receive a response to the grievance. If plaintiff finds the response is unsatisfactory, he must pursue the grievance through all available levels of appeal before presenting the claim in federal court. As has been recognized previously in this district, "the PLRA amendment made [it] clear that exhaustion is now mandatory." Langford v. Couch, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) (Ellis, J.).

In this case, plaintiff has failed to follow the mandatory requirement to fully and properly

4

exhaust his claim of deliberate indifference against Nurse Sidi in a timely manner. The exhaustion requirement applies regardless of the availability of the relief sought in the grievances and regardless of whether the inmate claims exhaustion would be futile. Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). By his own admission, plaintiff did not file a timely regular grievance regarding his medical care provided by Nurse Sidi on June 3, 2014. See Dkt. No. 9, Att. 2. Plaintiff specifically stated to Regional Ombudsman that he did not do so because he believed it would be futile to grieve his complaints since he had not received timely responses to his Informal Complaints; however, OP clearly states otherwise. See Dkt. No. 23, Ex. A. Thus, plaintiff's assertion of futility is no excuse for failing to properly and timely utilize the grievance procedure at SISP. Accordingly, this Court lacks jurisdiction to consider the merits of plaintiff's deliberate indifference claim, and the claim against defendant Nurse Sidi must be dismissed. Woodford, 548 U.S. at 85. The claim of excessive force against defendants Everett and Rodriguez remains pending.

Plaintiff's Motion to Amend must be denied because he appears to have already submitted all documents relevant to the exhaustion of his administrative remedies at SISP. A motion to amend warrants denial where there is "an apparent or declared reason [for doing so] - such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of [the] amendment." Dluhos v. Floating & Abandoned Vessel Known as "New York," 162 F.3d 63, 69 (2nd Cir. 1998) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Allowing plaintiff to amend his complaint at this time would be futile since he has already submitted all relevant documentation of his grievances filed at SISP.

Accordingly, it is hereby

ORDERED that defendant Nurse Sidi's Motion to Dismiss (Dkt. No. 22) be and is GRANTED; and it is further

ORDERED that plaintiff's Motion to Amend (Dkt. No. 30) be and is DENIED WITHOUT PREJUDICE; and it is further

ORDERED that plaintiff's Eighth Amendment claim against defendant Nurse Sidi be and is DISMISSED WITH PREJUDICE for lack of jurisdiction pursuant to 42 U.S.C. § 1997e(a).[1]

The Clerk is directed to enter final judgment in favor of defendant Nurse Sidi, pursuant to Fed. R. Civ. P. 58, and to send of copy of this Memorandum Opinion and Order to plaintiff and to counsel of record for defendants.

Entered this ___3rd___ day of ___February___ 2016.

Alexandria, Virginia

_____/s/_____
Anthony J. Trenga
United States District Judge

---

[1] In deference to plaintiff's pro se status, he is advised that this Order is not appealable until a final disposition has been entered regarding his remaining claims in this case.   If plaintiff wishes to appeal this Order, he must do so within thirty (30) days of this Court entering a final decision in this case, by filing a written notice of appeal with the Clerk's Office.   See Fed. R. App. P. 4(a).   A written notice of appeal is a short statement stating a desire to appeal this Order and noting the date of the Order plaintiff wants to appeal.   Plaintiff need not explain the grounds for appeal until so directed by the court. Failure to timely file a notice of appeal waives the right to appeal this decision.